[No. 703.]

J. W. PECK, RESPONDENT, v. ELLIOTT DODDS ET AL.,
APPELLANTS.

ASSIGNOR OF ACCOUNT CANNOT SUE—WHEN.—The assignees of an account
cannot authorize the assignor to bring suit in his own name, while they
retain the absolute property in the account.

IDEM—LIABILITY OF DEBTOR.—A debtor is not liable to the assignor and
assignee of an account at the same time, and where the assignees have
an undoubted right to sue, the assignor cannot maintain an action com-
menced in his own name.

APPEAL from the District Court of the Seventh Judicial
District, Lincoln County.

The testimony offered by plaintiff to show a reassign-
ment, by parol, of the account sued on, was as· follows:
J. W. Peck, plaintiff, testified "that he had a conversation,
in June, 1874, with W. W. Bishop, attorney for the assignees
of the account sued on; that Bishop asked him what he was
going to do with the account; that about August 1st Bishop
said to him : 'Well, you. have done nothing about that
collection yet.' I told him I had not. He turned around
to me and said : 'Go and collect this in your own name;
attach the cattle, if you can do no other way.' Witness had
a conversation subsequent to this with Mr. Glissan, one of
the assignees of the account, in which Glissan said to wit-
ness: 'You go and collect it in your own name. I under-
stand they are moving their cattle to the railroad.' I told
him I would. I then commenced this suit." Upon cross-
examination, this witness said : "Bishop and Glissan never
reassigned the account to me, nor have they verbally agreed
to do so, except in the conversations spoken of. Bishop
said I could not collect it except for the benefit of Glissan
and Bishop. I never asked Glissan to reassign it to me."

J. C. Foster testified that he heard a conversation be-
tween J. W. Peck and W. C. Glissan; that Peck insisted
upon Mr. Glissan collecting the Dodds account; that
Glissan told Peck to collect it himself in any way he could;

that there was some disagreement between them as to what could be done.

W. W. Bishop, being sworn, said : "I had a conversation with plaintiff about the collection of this Dodds account, and I was asked what I wanted done with it. I said I wanted it collected. Glissan and Peck came to me to determine what was to be done with this account. I said I would not sue upon it, nor have anything to do with it until after Peck had made an effort to collect it, as he had stated at the time of the assignment that he could and would collect it if he had the authority to do so. I then said, 'Do anything you have a mind to; collect it, if you can.' Peck then asked if I would give him a written assignment for it. I said, 'No; because the moment I give that assignment, any creditor who has not been mentioned in the assignment can attach the money for Peck's debts, and that would destroy the force of this assignment.' Major Peck said: 'The Dodds owe this money. I think I can collect it, and am willing to do all I can to help you get this money and everything else mentioned in the assignment, but I cannot act with my hands tied.' I said to him that I did not wish to tie his hands, nor to prevent his acting. I am willing to give you all the authority in this world to get this money and carry out your part of the agreement. All I ask is, that when the money is collected, that it shall be disposed of to pay your debts mentioned in the assignment." Referring to another conversation, this witness said: "I met Major Peck on the street, and he said, 'I want to sue the Dodds; they owe me that money, and I can make them pay it.' I then said, 'Sue them, and let the matter be settled one way or the other—the quicker the better.' He said, 'Do you authorize me to sue?' and I replied, 'Do what you please, I will have nothing to do with it. I don't want to be bound for any costs, nor be bothered with the matter. I have had all the trouble with this I am going to have.' He then said, 'Will you authorize me to sue?' and I said, 'Yes, as far as I can without releasing the money, for when it is collected it must be applied according to the terms of the assignment.'"

Upon cross-examination, this witness said : "I am the attorney in fact and at law for A. C. Bishop. * * * I claim, as such attorney, that all money now due from the Dodds should be paid to Glissan and Bishop. I have never released it, except conditionally. * * * I released the privilege of the firm of a lawsuit. I positively refused to reassign, except that I said I would not do so except as above stated. I never agreed that I would reassign it to him so as that he should own the money. I wanted that Glissan and Bishop should have the money named in the assignment. I always reserved the proviso that Glissan and Bishop should have all that money. I claim that instrument, as such, is in full force, and that if I came across any of that property or money mentioned, I would want it as their attorney."

*Pitzer & Corson*, for Appellants.

*A. B. Hunt*, for Respondent.

I. Every suit shall be prosecuted in the name of the real parties in interest, except as otherwise provided in the practice act. This case does not come under the exception. (Compiled Laws, Sec. 1067.)

II. A parol agreement to rescind a written contract is good, and such an agreement may be presumed from the acts of the parties. The law regards the substantial rights of the parties and will protect them. (*Green* v. *Wells & Co.*, 2 Cal. 585; *Dubois* v. *Delaware and Hudson Canal Co.*, 12 Wend. 334; *Smith* v. *Gugerty*, 4 Barb. 614.)

III. Parol evidence is admissible to prove a waiver of a written agreement entered into by the parties. (*Langworthy et al.* v. *Smith et al.*, 2 Wend. 588; *Fleming* v. *Gilbert*, 3 Johns. 529; *Monroe* v. *Perkins*, 9 Pick. 301; *Lockwood* v. *Canfield*, 20 Cal. 127; *Carlyon* v. *Lannan*, 4 Nev. 156; *Bingham et al.* v. *Thompson*, 4 Nev. 224.)

IV. Plaintiff was the proper party to bring this suit. He was the only and real party in interest. The assignees were to pay the debts out of the assets of plaintiff's property. No

one of the creditors of plaintiff ever at any time were parties to or were bound by the assignment. It was only an arrangement between plaintiff and the assignees, and the funds to pay Peck's debts with must come out of the property assigned. The assignees did not covenant to pay out of their own funds. Hence the plaintiff was the real party in interest to see that the Dodds account was collected, and in this light plaintiff and the assignees regarded the Dodds account. (*Wiggin* v. *McDonald*, 18 Cal. 126.)

V. Glissan and Bishop are forever debarred from bringing suit on the Dodds account, and it was not even urged that they could ever do so. (*Mitchell* v. *Reed*, 9 Cal. 204; *Plumb* v. *Cattaraugus Co. Ins. Co.*, 18 N. Y. 394; *Dezell* v. *Odell*, 3 Hill, 215; *Welland Canal Co.* v. *Hathaway*, 8 Wend. 482.)

By the Court, Beatty, J.:

The defendants in this case set up in their answer and on the trial proved that the account sued on had been assigned by the plaintiff to Bishop and Glissan before the commencement of the action, and themselves notified. The assignment referred to is in writing, and recites that it is made in consideration of the assumption by the assignees of certain debts of the assignor. It provides that the assignees are to take possession and dispose of the property enumerated, collect the accounts, and after paying themselves the amount of the debts assumed and their necessary expenses in managing the business, to return any overplus to the plaintiff. In the meantime the sale and assignment are to be absolute. There can be no doubt that so long as this assignment remained in force the right to sue on all accounts embraced by it was vested in the assignees exclusively as the real parties in interest. The plaintiff, not denying the assignment nor disputing its legal operation while in force, offered to prove in rebuttal a reassignment to him of the particular account upon which this action was brought. The testimony offered for that purpose was objected to by defendants and was admitted subject to their right to move to strike it

out, which they did upon the ground that it did not prove, or tend to prove, a retransfer of the account. The motion was overruled, the testimony submitted to the jury, and a verdict rendered against the defendants, upon which plaintiff had judgment.

Defendants appeal from the judgment, assigning error of the court in refusing to allow their motion to strike out as one of the grounds of appeal.

We think the ruling of the court was erroneous. Giving the utmost possible effect to all the testimony offered by the plaintiff on this point, and conceding the validity of a reassignment by parol, there is nothing to show such reassignment or any intention of the assignees to make one. It is true, they told plaintiff to collect the account in his own name, and to sue on it and to attach; but they coupled these directions with an express refusal to reassign. They seem to have thought that they could give plaintiff authority to sue, while they retained the absolute property in the account, and with it, of course, the right to sue in their own names. But, clearly, the defendants could not be liable to assignor and assignees at the same time, and as Bishop and Glissan·had an undoubted right to sue when this action was commenced, the plaintiff must necessarily fail.

Judgment reversed.